# IN THE UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| **CHARLIE L. JOHNSON,** § § **Plaintiff,** § § **vs.** § § **EAST BAY KIA, INC., SMART** § **AUTOMOTIVE GROUP, LLC, and** § **FIFTH THIRD BANK;** § § **Defendants.** § | **CASE NO.: 08-656** |

## COMPLAINT

COMES NOW the plaintiff, Charlie L. Johnson, (hereafter the "Plaintiff") by counsel, and for his complaint against the above-named defendants, alleges as follows:

## JURISDICTION AND VENUE

1. This action includes claims which arise under the statutes of the United States and this Court's jurisdiction is conferred by 28 U.S.C. § 1331. This action also includes state law claims as to which this Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper in this District because the acts and transactions occurred here and all the parties reside or transact business here.

2. In addition to the state law claims Plaintiff also claims damages pursuant to the Truth-in-Lending Act, 15 U.S.C. § 1601 et seq. (TILA), and the Equal Credit Opportunity Act, 15 U.S.C. § 1691 et seq., (ECOA).

## THE PARTIES

3. Plaintiff, Charlie L. Johnson, is a 61 year old African-American adult and is a resident and citizen of Baldwin County, Alabama.

4. Defendant, East Bay Kia, Inc., ("KIA") is on information and belief a corporation and operates a new and used car dealership located in Daphne, Alabama.

5. Defendant, Smart Automotive Group, LLC, ("SAG") is on information and belief a corporation located in Louisiana and on information and belief is engaged in the business of sales, advertising and credit.

6. Defendant, Fifth Third Bank, ("FIFTH THIRD") is a banking corporation located in Cincinnati, Ohio, and is engaged in the business of banking and extending credit to consumers.

7. On information and belief KIA and SAG were acting as agents for FIFTH THIRD at all relevant times herein.

## FACTUAL ALLEGATIONS

8. All the events complained of herein occurred in Baldwin County, Alabama.

9. On or about August 15, 2008, Plaintiff entered into an agreement to purchase a 2008 Kia Optima automobile, VIN No. KNAGE123X85169449, based on the representations made by agents of KIA and SAG and financed through Defendant, FIFTH THIRD.

10. Prior to the purchase of the automobile at issue, Plaintiff received an advertisement by mail for a "*Total Vehicle Clearance Event!*" at East Bay Kia that was scheduled from August 11th to August 20th 2008, with numerous vehicles and financing deals available to the public.

11. On or about August 14th 2008, Plaintiff's granddaughter, while at the event advertised by KIA, was allowed to drive home a Kia Rio, but was instructed to bring Plaintiff back the following day to co-sign with her on an auto loan.

12. The next day, Plaintiff and the granddaughter went to KIA to finalize the purchase of the Kia Rio.

13. As soon as they arrived, a salesperson, employed by KIA and SAG, informed Mr. Johnson that he could get a "better deal" and proceeded to switch him and the granddaughter to a used 2008 Kia Optima.

14. The Optima was test driven by the Plaintiff's granddaughter. The salesperson offered the Optima to the Plaintiff and his granddaughter for the same price as the Rio. It was explained by the salesperson that the offer included a $3,000.00 rebate.

15. The salesperson also stated that Plaintiff would receive $3,000.00 for his trade-in, one 2001 Ford Escort.

16. Furthermore, Mr. Johnson was also told that he would receive a check for $500.00 paid by KIA for co-signing on the loan and the granddaughter would receive $1,300.00 for a total amount rebated by KIA of $4,800.00.

17. The salesman also stated that KIA would pay $335.00 per month toward the loan for the car and the Plaintiff would only pay $200.00 a month for six months after the sale at which time KIA would refinance the car at a lower monthly rate.

18. Plaintiff was also promised by the KIA and SAG's agent that he would receive hundreds of dollars worth of free gasoline and other prizes as a result of purchasing the vehicle from KIA.

19. At the time of closing on the deal, Plaintiff was told by agents of Defendants that he would be the only legally obligated party on the loan documents and the Optima would be refinanced in just the granddaughter's name at the end of a six month period.

20. Believing all of these representations and relying upon them, Plaintiff agreed to the terms and waited several hours at the dealership until the paperwork was ready to sign.

21. During the signing of the loan and purchase documents, the Plaintiff was rushed through the process, was not allowed to review the documents and was told "just to sign" by agents of Defendants.

22. Plaintiff signed several form documents that were blank.

23. When the Plaintiff questioned the agent about the terms and blank documents, he was informed by the defendants' agents that the deal, as promised prior to the signing of the documents, would be reflected in the completed instruments.

24. Plaintiff signed several documents at the time of the closing, but was not provided any documentation regarding the terms of the sales agreement and was not provided a Truth-in-Lending disclosure statement or ECOA adverse action notice.

25. The plaintiff and his granddaughter left the 2001 Ford Escort at the Kia dealership pursuant to the instructions from the defendants' agents and drove off the lot in the used 2008 Optima.

26. Plaintiff called the dealership the next day, a Saturday, and requested to speak to the KIA or SAG finance officer about the loan paperwork.

27. Plaintiff was told that the officer's sister had passed away and to call back on Monday.

28. Plaintiff drove to the KIA dealership that Monday and asked to speak to the finance officer or a manager about the loan.

29. That day, at the time the plaintiff arrived, there was a crowd of customers, from the previous days at the KIA dealership, angrily demanding their missing paperwork and requesting to speak to the manager concerning the terms of their purchases.

30. The plaintiff and the other customers were repeatedly told that no management was on the premises and no one was available to discuss their situations and that they would have to return another day.

31. The situation became extremely hostile, and someone called the Daphne Police Department.

32. A police officer immediately arrived at the KIA dealership and spoke to a manager who had been present on the KIA premises the entire time.

33. The police officer ordered Plaintiff and the other distraught customers to leave the dealership.

34. Plaintiff called the KIA dealership the following day and asked about his missing paperwork once again and to discuss the contract terms and requested the return of his 2001 Ford Escort.

35. He was told his Escort was sold at auction the previous day for $2,400.00.

36. Plaintiff called and went to the KIA dealership several times over the next week to discuss the missing paperwork and to find out how he could return the Optima. During one visit to the dealership during normal business hours, he discovered it was closed.

37. Plaintiff finally received some paperwork, but no Truth-in-Lending disclosure or ECOA notice, in the mail approximately two weeks after the purchase of the vehicle.

38. The documents Plaintiff received did not reflect the terms and conditions that were presented by the agents for KIA and SAG at the time of the sale.

39. The plaintiff discovered that none of the rebates promised were disclosed in the documents and in fact he was paying $24,140.00 for the used Kia Optima and additional fees of $3,000 for "GAP" insurance, and a $2,500.00 service contract fee that was not disclosed or bargained for at the time of the sale.

40. Additionally, Plaintiff's trade in was not reflected on any of the documents.

41. The plaintiff did not receive a Truth-in-Lending disclosure statement.

42. Prior to bringing this action, the plaintiff notified the defendant of his claim pursuant to Code of Alabama, (1975) Titles 7 and 8  § 8-19-5(9), (11), and (27).

43. The defendants KIA, SAG and FIFTH THIRD conspired and colluded with each other to cause the damages alleged by the plaintiff herein.

44. Fifth Third is also liable to the plaintiff herein pursuant to the "FTC Holder Rule," 16 CFR § 433.

45. The defendants took adverse action against the Plaintiff by not extending credit to him on the best terms available.

46. The Plaintiff is a member of a protected group under the Equal Credit Opportunity Act ("ECOA").

## COUNT ONE
## FRAUD

47. Plaintiff incorporates the relevant foregoing paragraphs in this complaint as if fully set out.

48. Defendants KIA and SAG represented to the plaintiff, on the date and time of the purchase of the 2008 Kia Optima, that KIA would pay directly to the plaintiff and his granddaughter $1,800.00 and KIA would pay $335.00 per month toward the loan for the car and

the plaintiff would only be obligated to pay $200.00 a month for the next six months when KIA would refinance the car.

49. Defendants KIA and SAG represented to the plaintiff that the Kia Optima would be reduced in price by a $3,000.00 rebate and an additional $3,000.00 for the 2001 Ford Escort that the plaintiff traded in.

50. Defendants KIA and SAG represented to the plaintiff that the Kia Optima would be sold at the same price as a new Kia Rio that was first presented but in fact charged the plaintiff an additional $10,000.00 for the used Optima.

51. Defendant KIA and SAG represented to the plaintiff that he was to receive hundreds of dollars of free gas and other prizes for purchasing the Kia Optima.

52. Plaintiff believed the said representations of the agents and employees of Defendants and reasonably relied on and innocently acted upon them to his detriment by purchasing said 2008 Optima.

53. These representations were false because Defendants never provided the rebates to Plaintiff as promised; did not reduce the sale price of the Optima; did not sell the Optima for the price agreed upon; and did not provide the plaintiff the free gas and prizes.

54. As a proximate result of said representations made by Defendants, Plaintiff has suffered actual damages, mental anguish and emotional distress. Plaintiff claims actual damages and punitive damages of the defendants because of the intentional or gross and reckless nature of the fraud.

**WHEREFORE** Plaintiff demands judgment for compensatory damages, consequential damages, costs, punitive damages and different legal and/or equitable relief to which the plaintiff may be entitled in the cause to be determined by a jury.

## COUNT TWO
## CONVERSION

55.     Plaintiff incorporates the relevant foregoing paragraphs in this complaint as if fully set out.

56.     Defendants took control of Plaintiff's 2001 Ford Escort on or about September 5, 2008 and failed to credit him for its value as a trade-in.

57.     Plaintiff has demanded the return of the vehicle and the defendants have unlawfully refused to return the vehicle and on information and belief have sold the 2001 Ford Escort at auction.

**WHEREFORE**, Plaintiff demands judgment for actual and punitive damages plus interest from the date of the conversion.

## COUNT THREE
## BREACH OF CONTRACT

58.     Plaintiff incorporates the relevant foregoing paragraphs in this complaint as if fully set out.

59.     This Count is against defendant KIA only.

60.     On the date specified above, Plaintiff entered into an agreement with Defendant KIA whereby the plaintiff would receive an Optima for $200.00 a month for 6 months in which Kia would pay $335.00 toward the monthly payments and issue a check to the plaintiff and his granddaughter for $1,800.00, reflected by the note, attached as Exhibit A, that he received at the time of the consummation of the deal.

61.     Plaintiff also entered into an agreement with Defendants in which he would purchase the used 2008 Optima for the same price as a new Kia Rio with rebates and price reductions, including the trade in of the 2001 Ford Escort, totaling over $6,000.00.

62. Defendant breached its contract by not issuing a check to the Plaintiff for the amount promised; failing to implement the monthly payments as promised; failing to sell the vehicle for the price agreed upon; and failing to reduce the price of the vehicle purchased as promised.

**WHEREFORE**, Plaintiff demands judgment against Defendant for breach of the contract for actual damages, costs and attorney's fees.

## COUNT FOUR
## TRUTH-IN-LENDING ACT VIOLATIONS

63. Plaintiff incorporates the relevant foregoing paragraphs in this complaint as if fully set out.

64. The transaction at issues is a consumer transaction and is subject to the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.*

65. The defendants violated the requirements of Truth in Lending and Regulation Z in the following and other respects:

   a. By failing to provide the required disclosures prior to consummation of the transaction in violation of 15 U.S.C. § 1638(b) and Regulation Z § 226.17(b).

66. These violations were apparent on the face of the contract and documents.

**WHEREFORE** Plaintiff demands judgment for willful and/or negligent violation of the Truth-in-Lending Act and seeks actual damages, statutory damages, punitive damages, attorney fees and costs of this cause.

## COUNT FIVE
## CIVIL CONSPIRACY

67. Plaintiff incorporates the relevant foregoing paragraphs in this complaint as if fully set out.

68. Defendants SAG, KIA and FIFTH THIRD participated in a conspiracy by furnishing false advertisement and financial information to lure consumers such as the plaintiff to purchase vehicles from KIA that were not sold as advertised.

69. Defendants also participated in a conspiracy by making fraudulent statements and sales promises that were not included in the final terms of the purchase agreements in order to sell vehicles that were priced above the actual retail value to Plaintiff and others.

70. On information and belief, Defendants also participated in a conspiracy whereby every vehicle sold by KIA which was financed by FIFTH THIRD would result in a "kick-back" or "yield spread premium" paid directly to KIA by FIFTH THIRD.

71. As a proximate result of the actions by the Defendants, the Plaintiff suffered damages.

**WHEREFORE**, Plaintiff demands judgment against the Defendants for actual damages, punitive damages, costs and attorney's fees.

## COUNT SIX
## EQUAL CREDIT OPPORTUNITY ACT VIOLATIONS

72. Plaintiff incorporates the relevant foregoing paragraphs in this complaint as if fully set out.

73. On information and belief, Defendants increased the sales price of the vehicle herein based on the race and age of Plaintiff sold him a used Kia Optima for more than $10,000.00 above its actual value.

74. Defendants have otherwise discriminated against Plaintiff based on his race and/or age.

75. Defendants violated the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq*.,:

    a. by discriminating against the Plaintiff on account of his race;

   b. by discriminating against the Plaintiff on account of his age;

 76. Additionally, the Defendants have not complied with the notification requirements of the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.*, set forth in Regulation B, 12 C.F.R. §202.9(a)(1)(i) and had otherwise violated the ECOA.

 **WHEREFORE**, Plaintiff demands judgment for willful and/or negligent violation of the Equal Credit Opportunity Act and seeks actual damages, statutory damages, punitive damages, attorney fees and costs of this cause.

## COUNT SEVEN
### NEGLIGENT HIRING & SUPERVISION

 77. Plaintiff incorporates the relevant foregoing paragraphs in this complaint as if fully set out.

 78. Defendants negligently or wantonly hired and/or supervised their agents which resulted in the wrongful conduct of the agents as set forth herein. Defendants either: (i) knew or should have known of the unfitness of its agents who are described above and yet employed them or continued to employ them or used their services without proper instruction with a disregard of the rights of the plaintiff, (ii) authorized the wrongful conduct of said agents set forth hereby, or (iii) ratified the wrongful conduct of the agents as set forth herein; and said wrongful acts of agents were calculated to and did benefit the defendants.

 79. As a proximate result of the negligence and/or wantonness of Defendants as set out above, the plaintiff has been damaged by the actions of the defendants' agent.

 **WHEREFORE**, Plaintiff demands judgment against Defendants including compensatory and punitive damages and attorneys' fees and all costs of this litigation and all other just, general and equitable relief.

*[signature]*

_____
EARL P. UNDERWOOD, JR. (UNDEE6591)
JAMES D. PATTERSON (PATJ6485)

**Law Offices of Earl P. Underwood, Jr.**
**21 South Section St.**
**Fairhope, Alabama 36533**
**Phone: 251-990-5558**
**Fax:   251-990-0626**
epunderwood@alalaw.com
jpatterson@alalaw.com

## PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.

*[signature]*

_____
EARL P. UNDERWOOD, JR.

**DEFENDANTS TO BE SERVED BY CERTIFIED MAIL AS FOLLOWS:**

East Bay Kia, Inc.
Registered Agent:  Richard Stoff
27320 Hwy 98
Daphne, Alabama 36526

Smart Automotive Group, LLC
Registered Agent:  Bernard E. Burst, III
1329 Gardenia Drive
Metarie, LA  70005

Fifth Third Bank
CSC Lawyers Incorporating Service
150 S. Perry Street
Montgomery, AL  36104